IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JOHNRYAN S.,

           Plaintiff,

v.                             Civil Action No.
                                   5:20-CV-1458 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

---

APPEARANCES:                     OF COUNSEL:

FOR PLAINTIFF

OLINKSY LAW GROUP           MELISSA A. DELGUERCIO, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.         CHRISTOPHER L. POTTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on July 6, 2022, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Plaintiff's motion for judgment on the pleadings is GRANTED.

2)   The Commissioner's determination that plaintiff was not

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:   July 11, 2022
         Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOHNRYAN S.,

                    Plaintiff,

vs.                                          20-CV-1458

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------x
```

**TRANSCRIPT OF DECISION**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
held on July 6, 2022
100 S. Clinton Street, Syracuse, New York


APPEARANCES (by telephone)

For Plaintiff:

    OLINSKY LAW GROUP
    250 South Clinton Street
    Syracuse, New York 13202
    BY:  MELISSA A. DELGUERCIO, ESQ.

For Defendant:

    SOCIAL SECURITY ADMINISTRATION
    15 New Sudbury Street
    Boston, MA 02203
    BY:  CHRISTOPHER POTTER, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1          THE COURT:  Let me begin by thanking counsel for
2   excellent and spirited presentations.  I've enjoyed working
3   with you on this matter.
4          Plaintiff has commenced this proceeding pursuant to
5   42, United States Code, Sections 405(g) and 1383(c)(3) to
6   challenge an adverse determination by the Commissioner of
7   Social Security finding that he was not entitled to the Title
8   XVI benefits for which he applied.  The background is as
9   follows.
10         Plaintiff was born in January of 1984.  He stands
11  5-foot 7 or 5-foot 8 inches in height and has weighed between
12  158 and 168 pounds.  He lives with his mother and son who was
13  11 years of age in December of 2019.  They live in Syracuse,
14  New York, in a two-family home.
15         Plaintiff has a sixth grade education and while in
16  school attended regular classes.  He is right-handed.
17  Plaintiff has no driver's license and he does not take public
18  transportation.  For transportation to appointments he uses
19  Medicaid transports.
20         Plaintiff has worked in the past but stopped in
21  February of 2018 after being stabbed in the head by his
22  mother's boyfriend during a domestic incident resulting in a
23  traumatic brain injury and a plate being placed in his head.
24  While he was employed he occupied some short-term casual
25  positions as a cashier in such places as Dunkin' Donuts,

Price Chopper, and in a gas station.

Plaintiff also was in prison on and off over a period of eight years, having been convicted for such crimes as burglary, knife assault, and possession of stolen credit cards. Included in that is seven months spent in solitary confinement.

Although plaintiff's physical condition is not at issue in this case, he does suffer from some issues, including overactive bladder, history of Grave's disease, GERD, and chronic leg pain.

Mentally, plaintiff suffers from posttraumatic stress disorder, or PTSD, anxiety disorder with agoraphobia, depression, a mood disorder, a panic disorder, and a history of opioid abuse in remission. He went through outpatient substance abuse therapy in 2018. He also reports that he was addicted, at least he told Dr. Shapiro, from 2006 to 2010. Plaintiff has panic attacks two times per day on average and suffers from paranoia. He notes that he was molested by a neighbor at age seven or eight.

Plaintiff has treated with various therapists and healthcare providers, including Dr. Daniel Ratnarajah, R-A-T-N-A-R-A-J-A-H, his primary care physician. Also Dr. Nevena, N-E-V-E-N-A, Radonjic, R-A-D-O-N-J-I-C, a psychiatrist who has treated the plaintiff since October of 2018. He also treated with Circare, C-I-R-C-A-R-E, from

1    January to May of 2018.  He also sees therapist Bruce Green.
2               Plaintiff is a former smoker having smoked
3    approximately one pack per day, but testified that he quit.
4               In terms of activities of daily living, plaintiff
5    is able to bathe, dress, groom, cook, clean, do laundry.  He
6    did play internet poker, although at page 64 during the
7    hearing he testified that he does not any longer.  He is able
8    to socialize with a cousin, watch TV.  He once drove to Maine
9    to pick up his son who was reportedly suicidal.  He does not
10   shop because of his anxiety.
11              Procedurally, plaintiff applied for Title XVI
12   benefits on April 2, 2018, alleging an onset date of
13   September 1, 2008.  He claims disability, at page 203, based
14   upon his traumatic brain injury, GERD, fibromyalgia, chronic
15   leg pain, Grave's disease, overactive bladder, PTSD, anxiety,
16   persistent depression, and agoraphobia.
17              A hearing was conducted on December 16, 2019 by
18   Administrative Law Judge Michael J. Kopicki to address
19   plaintiff's application.  On December 27, 2019, that
20   Administrative Law Judge, or ALJ, issued an unfavorable
21   decision which became the final determination of the Agency
22   on September 24, 2020, when the Social Security
23   Administration Appeals Council denied plaintiff's application
24   for review.  This action was commenced on November 27, 2020,
25   and is timely.

1    In his decision ALJ Kopicki applied the familiar
2    five-step test for determining disability.
3    At step one, he concluded that plaintiff had not
4    engaged in substantial gainful activity since the date of his
5    application, April 2, 2018, although he did have some minor
6    unreported earnings during the relevant period.
7    At step two, he concluded that plaintiff does
8    suffer from severe impairments which impose more than minimal
9    limitations on his ability to perform basic work functions,
10   including depressive disorder, generalized anxiety disorder,
11   and PTSD.
12   At step three, ALJ Kopicki concluded that
13   plaintiff's conditions do not meet or medically equal any of
14   the listed presumptively disabling conditions set forth in
15   the Commissioner's regulations, specifically considering
16   listings 12.04, 12.06 and 12.15.
17   At step four, the Administrative Law Judge
18   concluded plaintiff had not engaged in anything that would be
19   considered past relevant work.
20   Proceeding to step five, he determined based upon
21   the testimony of a vocational expert who was presented with a
22   hypothetical that tracked the RFC finding that plaintiff was
23   not disabled and was capable of performing available work in
24   the national economy, including as a marker, router, and
25   routing clerk.

1           As you know, the Court's function in this case is
2    twofold; I must determine whether substantial evidence
3    supports the resulting determination and whether correct
4    legal principles were applied.  I will acknowledge that it is
5    an extremely deferential standard.  Substantial evidence
6    being defined as such relevant evidence as a reasonable
7    person would find sufficient to support a conclusion.
8           As the Second Circuit Court of Appeals noted in
9    *Brault versus Social Security Administration Commissioner,*
10   683 F.3d 443, from 2012, the standard to be applied is
11   extremely stringent and deferential.  Under that standard the
12   Court noted in *Brault* once an Administrative Law Judge finds
13   a fact, that fact can be rejected only if a reasonable
14   factfinder would have to conclude otherwise.
15          The plaintiff in this case raises essentially a
16   single contention that the medical evidence and opinion
17   evidence in the record was improperly evaluated, focusing on
18   opinions given by Dr. Jeanne Shapiro, and the treating
19   physician Dr. Radonjic.
20          The case is subject, as counsel appropriately
21   noted, to new regulations which took effect for applications
22   filed after March of 2017.  Under those regulations the ALJ
23   no longer defers or gives any specific evidentiary weight,
24   including controlling weight, to any medical opinion.  20 CFR
25   Section 416.920c(a).  Instead the ALJ must consider each

1  medical opinion using relevant factors set out in the
2  regulation and must specifically address the factors of
3  supportability and consistency of those medical opinions, and
4  must articulate how persuasive the medical opinion was found
5  to be after considering those two factors.
6          The ALJ is also permitted, but not required, to
7  consider other relevant factors, including notably the
8  source's relationship with the claimant, including the length
9  of the treatment relationship, frequency of examinations,
10 purpose of the treating relationship, extent of the treating
11 relationship, and whether it was merely an examining
12 relationship.
13         And, of course, the law remains under such cases as
14 *Veino v. Barnhart*, 312 F.3d 578, from the Second Circuit,
15 2002, that it is in the first instance for the Administrative
16 Law Judge to weigh conflicting opinions.  In this case the
17 opinion of Dr. Jeanne Shapiro is at issue.  Dr. Shapiro is an
18 examining consultant who conducted an employability
19 assessment for the Onondaga County Department of Social
20 Services on January 9, 2018, and then later conducted a
21 psychiatric examination of the plaintiff on May 25, 2018.  In
22 the employability assessment, which appears at pages 310 to
23 315 of the Administrative Transcript, Dr. Shapiro found that
24 plaintiff, on page 312, had abnormal mood and abnormal
25 affect.

1          Later on in the form, at page 314, the expert
2   concluded that plaintiff is extremely limited, which is
3   defined as equal to or more than 75 percent of the time, in
4   the areas of regularly attending to a routine and maintaining
5   a schedule, and ability to use public transportation.  The
6   form asks for conclusions regarding employability.
7   Interestingly, when speaking of that form Administrative Law
8   Judge Kopicki characterized it as stating that Dr. Shapiro
9   opined the claimant could work with simple instructions and
10  had moderate limitation working with complex tasks, et
11  cetera.  And that's actually not what the form says.  The
12  conclusion on employability is on page 315, "Individual
13  appears permanently disabled, condition is not expected to
14  improve, and is unable to participate in any activities."
15  When asked is this individual unable to work for more than
16  six months due to his or her mental condition, the answer is
17  yes.
18          The Administrative Law Judge addressed this opinion
19  at pages 17 and 19 of his decision and found it to be
20  generally unpersuasive.  The reasons given on page 19 were
21  inconsistency with the later opinion, which I'll address in a
22  moment, even though they're four months apart, "The opinions
23  are also inconsistent with the subsequent treatment record,
24  which notes the claimant felt much better when taking his
25  psychiatric medication," and interestingly says, "and which

1   is devoid of significant behavioral disturbance around
2   others," which is inaccurate because the plaintiff was
3   engaged in some sort of altercation involving the use of
4   knives in September of 2018.  It also states that the
5   opinions are vague without specific vocational limitations,
6   which I might agree with regard to the first opinion but, as
7   will be seen, I cannot agree with with regard to the later
8   opinion.
9          By the way, I do reject any contention, and I'm not
10  sure the contention is being pressed, that once a medical
11  opinion is addressed and the factors of supportability and
12  consistency are articulated, the Court must uphold the
13  Administrative Law Judge's decision even if the
14  supportability and consistency finding is flawed.  The
15  substantial evidence test still controls.
16         The next opinion from Dr. Shapiro is from May 25,
17  2018.  It appears at 440 to 444 of the Administrative
18  Transcript.  It's based on an examination which was conducted
19  of the plaintiff.  And it was noted in the objective portion
20  of the opinion that when it comes to mental status, plaintiff
21  was somewhat withdrawn, his affect was constricted.  During
22  the examination the complainant reported feeling anxious and
23  depressed, the claimant was tense and fearful and was sad and
24  withdrawn.  The medical source statement constituting
25  Dr. Shapiro's opinion finds that the plaintiff appears to

1    have moderate to marked limitations interacting adequately
2    with supervisors, coworkers and the public, and also in
3    regulating emotions, controlling behavior, and maintaining
4    well-being.  As I indicated, Dr. Shapiro's opinions were
5    found generally unpersuasive and I articulated the reasons.
6            The opinions of Dr. Radonjic, a treating source,
7    are even more restricted in terms of what she believes the
8    plaintiff is capable of doing notwithstanding his mental
9    impairments.  Dr. Radonjic filled out an employability
10   assessment form on April 9, 2019.  It appears at 1751 and
11   1752 of the record.  It's actually signed by someone else
12   whose signature is illegible on March 18, 2019, but
13   Dr. Radonjic also appears to have ascribed to the opinion.
14           The opinion finds that plaintiff is severely
15   limited in many areas:  Ability to perform low stress, simple
16   and complex tasks independently; ability to interact with
17   others and maintain socially appropriate behavior without
18   exhibiting behavioral -- it's difficult to read -- extremes I
19   think is the word; ability to maintain attention and
20   concentration for routine tasks; and demonstrates ability to
21   function in a work setting.  It also finds that when it comes
22   to employability, the box is checked, "no activity except
23   treatment or rehabilitation, not permanently disabled," but
24   the expected duration is more than 12 months.
25           Dr. Radonjic issued a more substantial opinion on

1  November 26, 2019.  It appears at pages 2252 through 2257 of
2  the Administrative Transcript.  It asks for certain verbal
3  explanations and then it seeks opinions in several domain
4  areas.  In the domain of understanding, remembering, or
5  applying information, Dr. Radonjic finds plaintiff extremely
6  limited, meaning more than 20 percent of the time, in three
7  of eleven specified subareas.  In interacting with others,
8  the treating doctor finds extreme limitations in four of
9  eight subareas.  In concentration, persistence, or
10 maintaining pace, again extreme inability in four of eight,
11 and three of the four remaining are deemed marked or serious
12 limitations.  In adapting or managing oneself, the plaintiff
13 is limited, according to Dr. Radonjic, in five of ten
14 specified areas.
15         The Administrative Law Judge considered
16 Dr. Radonjic's opinions and found them unpersuasive for the
17 following reasons:  They're internally inconsistent as they
18 note both no limitation and also extreme limitation working
19 with simple tasks and instructions.  Two, not supported by
20 her own notation that the claimant has average intelligence,
21 which I question how intelligence relates to the ability to
22 interact with others.  Three, they're inconsistent with
23 observations of other treatment providers that the claimant
24 was cooperative during evaluations, et cetera.  Four, the
25 record does not contain any evidence of psychiatric

1  hospitalizations during the pendency of his claim.  I note
2  that there is evidence in the record of prior
3  hospitalizations but they predate any onset of disability in
4  this case.  Five, he is able to perform his activities of
5  daily living, help his mother, and care for his son.  And
6  six, they're not supported by the records of therapy through
7  2019, which demonstrate improvement with treatment.  So those
8  are the reasons cited.
9        There is also an opinion, as we've discussed, from
10 Dr. M. Ferrin, dated July 12, 2018, a State Agency
11 non-examining consultant.  It appears at 81 through 95 of the
12 Administrative Record.
13       Dr. Ferrin opines that plaintiff is capable of
14 essentially performing simple work.  He finds the claimant is
15 able to understand and remember simple and detailed
16 instructions and procedures, has some difficulties in the
17 area of sustained concentration and persistence, but is able
18 to sustain an adequate concentration to complete ordinary
19 tasks.  He notes that while the claimant may have some
20 difficulty with socialization in daily life, he is capable of
21 interacting in a socially appropriate manner.  And while
22 there is some difficulty with adaptation, he is able to cope
23 with basic changes.
24       I do note that even under the new regulations all
25 medical opinions are not equal.  A medical source, who has

had the opportunity to examine a claimant, may have a better understanding than someone who reviews a cold file; 20 CFR Section 416.920c(c)(3)(v).

When it comes to Dr. Shapiro, the ALJ found differences in the two opinions but they're very different formats. For example, the first on the employability assessment did not ask anything about interacting with others, maintaining of self, regulating emotions. The evidence is equivocal; yes, there are some treatment notes that indicate improvement but some clearly do not.

The Administrative Law Judge found that there were no vocational, specific vocational limitations and the opinion was vague. I don't agree. The subsequent treatment notes reveal some worsening, including, as I said, the knife fight in September 2018. When it comes to activities of daily living, I do not believe that they support a finding that plaintiff is capable of performing work on a five-day, eight-hour-per-day consistent basis.

Having a panic disorder, anxiety, depression, PTSD is not necessarily inconsistent with the ability to do simple cooking, cleaning, showering. The evidence is very clear plaintiff does not like to go out, he does not use public transportation, he does not shop. In a physical ability case activities of daily living might shed a great deal more light on what objectively a plaintiff is able to do, but in a

1  mental case such as this, I don't find that a logical
2  connection has been demonstrated between plaintiff's
3  activities of daily living and his ability to work on a
4  sustained basis in competitive employment.
5       I reject the suggestion, by the way, of the
6  plaintiff that there was a duty to recontact.  I don't think
7  that there was in this case.  There was certainly permission
8  under the regulations for the Administrative Law Judge to
9  recontact, but it is not required; *Marjorie H., on behalf of*
10 *Nelson L. versus Commissioner,* 2019 WL 4142592, Northern
11 District of New York, August 30, 2019.
12      When it comes to Dr. Radonjic, as I said before,
13 average intelligence does not to me speak to the ability to
14 interact with others or to maintain oneself and regulate
15 emotions.  The activities of daily living as supporting
16 plaintiff's ability to perform competitive work fails for the
17 reason that I just articulated; the treatment records are
18 equivocal, and to some degree the Administrative Law Judge
19 did cherrypick and focus on a very few that showed
20 improvement.
21      I note that the fact that plaintiff may have been
22 cooperative with his healthcare providers during exams, I'm
23 not sure that that necessarily translates into the ability to
24 interact with supervisors, coworkers, and the public.  I
25 agree with District Judge James Robart, in *Tina R. versus*

*Commissioner of Social Security*, 2019 WL 1417301, from the Western District of Washington, that the fact that a claimant manages to be cooperative with her healthcare providers does not contradict opinions that the claimant is limited in the ability to interact with others, including co-workers, supervisors and the general public.  Healthcare providers are professionals trained to deal with mentally and physically ill or disabled patients, and a medical treatment relationship is not like the relationship a worker has with coworkers, supervisors or the general public.  Interactions with treatment providers are likely to be less demanding or more supportive than typical work settings, and thus, do not demonstrate an ability to work with coworkers, supervisors or the general public in a work setting.

So while the ALJ attempted to explain reasoning for finding consistency and supportability of the opinions of Dr. Shapiro and Dr. Radonjic as lacking, I find that the explanation is flawed.  There are a number of misstatements made by the Administrative Law Judge.  And I find that the error is harmful because the opinions do not support the residual functional capacity and could show that even if plaintiff meets or medically equals any or some of the listed Section 12.00B criteria relative to Section 12.00 of the listings, the competing opinions in this case were not properly weighed.

1              I agree with the plaintiff's attorney during oral
2    argument who conceded that this probably does not warrant a
3    directed finding.  I don't find that there is persuasive
4    proof of disability in the record and that the further
5    development of the record would not serve any useful purpose.
6    I think this needs a second look at the opinions of
7    Dr. Shapiro and the opinions of Dr. Radonjic, as well as
8    Dr. Ferrin, and if necessary but not -- if deemed
9    appropriate, although I don't find that it is absolutely
10   necessary, to either recontact one or both of those sources
11   or order another consultative mental examination, but I will
12   leave that to the wisdom of the Agency.
13             So, I will grant judgment on the pleadings to the
14   plaintiff, vacate the Commissioner's determination and remand
15   the matter for further proceedings consistent with this
16   opinion.  Thank you both.  I hope you have a good afternoon.
17
18                  *              *              *
19
20
21
22
23
24
25

C E R T I F I C A T I O N

I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter